IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| **LakeSouth Holdings, LLC,** § | |
| § | |
| *Plaintiff*, § | |
| § | Civil Action No. _____ |
| v. § | |
| § | |
| **Tuesday Morning Corporation, and** § | Jury Trial Demanded |
| **Tuesday Morning, Inc.,** § | |
| § | |
| *Defendants*. § | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

COMES NOW Plaintiff LakeSouth Holdings, LLC and files this Original Complaint for patent infringement against Tuesday Morning Corporation and Tuesday Morning Inc., and alleges as follows:

**NATURE OF THE SUIT**

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**THE PARTIES**

2. Plaintiff **LakeSouth Holdings, LLC ("Plaintiff" or "LakeSouth")** is a Delaware limited liability company with its principal place of business located at P.O. Box 93883, Southlake, Texas 76092, which is in the Northern District of Texas.

3. Defendant **Tuesday Morning Corporation ("TMC")** is a Delaware corporation with its principal place of business at 6250 LBJ Freeway, Dallas, Texas 75240, which is in the

Northern District of Texas. Tuesday Morning Corporation is registered to do business in Texas. Tuesday Morning Corporation is the corporate parent of Tuesday Morning, Inc.

4. Defendant **Tuesday Morning, Inc. ("TMI")** is a Texas corporation with its principal place of business at 6250 LBJ Freeway, Dallas, Texas 75240, which is in the Northern District of Texas. Tuesday Morning, Inc. is a wholly-owned subsidiary of Tuesday Morning Corporation.

5. Unless otherwise noted, Defendants TMS and TMI are hereinafter collectively referred to as "**Defendants**" or "**Tuesday Morning**" in this complaint.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

7. Upon information and belief, Tuesday Morning, directly and/or through subsidiaries, agents, representatives, or intermediaries, has transacted business in this District and has committed and continues to commit and/or induce acts of patent infringement in this District. Thus, venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b).

8. Upon information and belief, Tuesday Morning has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided

to individuals in Texas and in this judicial district. Thus, Tuesday Morning is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391 and 28 U.S.C. § 1400(b).

## THE PATENTS AT ISSUE

9. Mr. Gregory G. Kuelbs is a Texas resident and a prolific inventor. Mr. Kuelbs is a named inventor on more than 40 patents. Mr. Kuelbs lives in Westlake, Texas, which is in the Northern District of Texas.

10. This cause of action asserts infringement of United States Patent No. 6,612,713 ("the '713 Patent") and United States Patent No. 8,794,781 ("the '781 Patent") (collectively, "the Asserted Patents").

11. The '781 Patent, entitled "Umbrella Apparatus," duly and legally issued on August 5, 2014, from U.S. Patent Application No. 10/650,537, filed on August 28, 2003, naming as inventor Mr. Kuelbs. A true and correct copy of the '781 Patent is attached hereto as **Exhibit A** and is incorporated by reference.

12. The '713 Patent, entitled "Umbrella Apparatus," duly and legally issued on September 2, 2003, from U.S. Application No. 10/068,424, filed on February 7, 2002, naming as inventor Mr. Kuelbs. After an *inter partes* reexamination proceeding, the U.S. Patent and Trademark Office issued a reexamination certificate on September 23, 2013. A true and correct copy of the '713 Patent is attached hereto as **Exhibit B** and is incorporated by reference. A true and correct copy of the reexamination certificate is attached as **Exhibit C** and is incorporated by reference.

13. Tuesday Morning has not obtained a license to the Asserted Patents.

14. Tuesday Morning does not have LakeSouth's permission to make, use, sell, offer to sell, or import products that are covered by one or more claims of the Asserted Patents.

15. Multiple companies, in and outside the context of litigation, have obtained patent licenses to the '713 Patent and '781 Patent. The licensees have supplied and/or are supplying solar-powered outdoor and patio umbrellas, licensed under the Asserted Patents, to major retailers such as Home Depot, Target.com, Wal-Mart, Sears, and Bed Bath & Beyond.

16. Tuesday Morning needs to obtain a license to the Asserted Patents and cease its ongoing infringement of LakeSouth's patent rights.

17. The '713 Patent has been recently litigated in the Northern District of Texas. On August 10, 2015 in the *LakeSouth Holdings, LLC v. Ace Evert, Inc., et al.*, No. 3:14-cv-1348 (N.D. Texas) case, the Court issued a claim construction order construing various claims terms of the '713 Patent. A true and correct copy of the claim construction order (Dkt No. 95) is attached hereto as **Exhibit D**.

18. Plaintiff LakeSouth is the owner and assignee of all rights, title, and interest in and under the '713 Patent and '781 Patent.

19. LakeSouth has standing to sue for infringement of the '713 Patent and the '781 Patent.

20. On information and belief, to the extent any marking was required by 35 U.S.C. § 287, LakeSouth and all predecessors in interest to the '713 Patent and '781 Patent complied with any such requirements.

## GENERAL ALLEGATIONS

21. Upon information and belief, Tuesday Morning purchases various patio and outdoor solar-powered umbrellas that it uses, offers to sell, sells, distributes, and/or imports in the United States.

22. Tuesday Morning uses, has used, offers to sell, has offered to sell, sells, has sold, imports, and/or has imported solar-powered umbrellas that include lights and a solar panel. These umbrellas infringe one or more claims of the Asserted Patents and include without limitation the **"9 Ft. Solar Lights Umbrella"** and all current and prior reasonably similar solar-powered umbrellas having the same or equivalent functions and features to the extent relevant to the claims of the Asserted Patents ("the Accused Umbrellas").

23. The Accused Umbrellas are and have been sold, offered for sale, and/or marketed by Tuesday Morning through its retail stores, including stores in the Northern District of Texas, and/or its website at www.TuesdayMorning.com.

24. Among the Accused Umbrellas that Tuesday Morning uses, offers for sale, sells, and/or imports are, without limitation, the **"9 Ft. Solar Lights Umbrella"** (including any and all, current and prior, reasonably similar solar-powered umbrellas having the same or equivalent functions and features and/or that are or were named or identified as SKU #1586623, Mfg. Style #S00140-IND; #1586981, Mfg. Style #S00140-TAU-TM15_1). This taupe-colored version umbrella is pictured in Figures 1 and 2 below.



**Figure 1 – "9 Ft. Solar Lights Umbrella"**



Figure 2 – "9 Ft. Solar Lights Umbrella"

25. The **"9 Ft. Solar Lights Umbrella"** consists of at least an umbrella canopy with multiple rib members, umbrella pole, crank system, solar rechargeable power unit, and LED (light emitting diodes) lighting system. Specifically, the umbrella has the following:

   a. An umbrella canopy that has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b. An umbrella pole that is intended to be used with a base support that acts a support structure for the pole, including but not limited to a table, the ground, or other support structure adapted to receive the pole.

c. A crank system that comprises a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d. A solar rechargeable power unit that collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a power wire jack whereby, when a power wire is inserted, power is transmitted from the power unit to the LED lights mounted on the rib members.

e. A lighting system with multiple LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light that is mounted on a rib member has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

26. Further discovery may reveal additional infringing products and/or models.

27. Upon information and belief, the Accused Umbrellas are offered for sale and sold within the Northern District of Texas.

28. Tuesday Morning has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of the Asserted Patents including at least Claim 2 of the '713 Patent and Claim 1 of the '781 Patent by using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Accused Umbrellas.

29. Tuesday Morning's customers have infringed and continue to infringe the '713 Patent and the '781 Patent by using the Accused Umbrellas purchased from Tuesday Morning. Through its retail stores, web site, product information, and/or sales and marketing activities, Tuesday Morning solicits, instructs, encourages, and aids and abets its customers to purchase and use the Accused Umbrellas, including to use the Accused Umbrellas with a base support.

30. Tuesday Morning's customers infringe the '713 Patent by using the Accused Umbrellas in combination with a base support including but not limited to an umbrella base,

table, or the ground to support positioning the Accused Umbrellas in an upright position. The Accused Umbrellas constitute a material part of the combination, and Tuesday Morning has known and still knows its Accused Umbrellas are especially designed, made and/or adapted for use in a way that infringes one or more claims of the '713 Patent.

31.     Further, Tuesday Morning's Accused Umbrellas are not a staple article or commodity of commerce suitable for substantial noninfringing uses. For example, the Accused Umbrellas are umbrellas, designed to be used as umbrellas, and have no substantial noninfringing use as something other than an umbrella. Tuesday Morning has not advertised, marketed, promoted, or represented the Accused Umbrellas as having any use other than as umbrellas.

32.     On information and belief, Tuesday Morning actions have been with specific intent to cause infringement or Tuesday Morning has been willfully blind to the resulting infringement because Tuesday Morning has had actual knowledge of the '713 Patent and/or the '781 Patent and knowledge that its acts were inducing infringement of the Asserted Patents since at least the date Tuesday Morning received notice that such activities infringed the Asserted Patents.

33.     LakeSouth has been and continues to be damaged as a result of Tuesday Morning's infringing conduct. Tuesday Morning is therefore liable to LakeSouth in an amount that adequately compensates LakeSouth for Tuesday Morning's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

34.     Tuesday Morning failed to obtain permission from LakeSouth to use, make, offer to sell, sell, or import products incorporating the inventions claimed in the Asserted Patents.

35. For each count of infringement listed below, LakeSouth incorporates and realleges the allegations contained in the preceding paragraphs above including these General Allegations as if fully set forth in each count of infringement.

## Count I – INFRINGEMENT OF THE '781 PATENT

36. Tuesday Morning has been and is now directly infringing the '781 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claim 1 of the '781 Patent, including but not limited to the Accused Umbrellas.

37. In addition, since the filing of the Original Complaint in this lawsuit, Tuesday Morning has been and is now indirectly infringing the '781 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to directly infringe the '781 Patent. For example, Tuesday Morning sells the Accused Umbrellas to its customers for the express purpose of having its customers use the Accused Umbrellas in violation of 35 U.S.C. § 271(a). Through its retail stores, web site, product information, and/or sales and marketing activities, Tuesday Morning solicits, instructs, aids and abets, and encourages its customers to purchase and use the Accused Umbrellas.

38. As a result of Tuesday Morning's infringement of the '781 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## Count II – INFRINGEMENT OF THE '713 PATENT

39. Since the filing of the Original Complaint in this lawsuit, Tuesday Morning has been and is now indirectly infringing the '713 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to directly infringe the '713 Patent including at least Claim 2 of

the '713 Patent. For example, Tuesday Morning sells the Accused Umbrellas to its customers for the express purpose of having its customers use the Accused Umbrellas in violation of 35 U.S.C. § 271(b). Through its retail stores, web site, product information, and/or sales and marketing activities, Tuesday Morning solicits, instructs, aids and abets, and encourages its customers to purchase and use the Accused Umbrellas, including to use the Accused Umbrellas with a base support and/or umbrella base.

40. In addition to and/or in the alternative, since the filing of the Original Complaint in this lawsuit, Tuesday Morning has been and is now contributorily infringing the '713 Patent, including at least Claim 2 of the '713 Patent, in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing into the United States the Accused Umbrellas, which are a component of a patented machine, manufacture, combination, or composition, the Accused Umbrellas constituting a material part of the invention, and Tuesday Morning knowing the same to be especially made or especially adapted for use in a manner that infringes one or more claims of the '713 Patent. Further, the Accused Umbrellas are not a staple article or commodity of commerce suitable for substantial noninfringing use.

41. As a result of Tuesday Morning's infringement of the '713 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## DEMAND FOR A JURY TRIAL

42. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LakeSouth demands a trial by jury on all issues triable of right by a jury.

**PRAYER FOR RELIEF**

43. WHEREFORE, LakeSouth respectfully requests that this Court enter judgment in its favor and grant the following relief:

44. A judgment that Tuesday Morning has directly infringed one or more claims of the '781 Patent;

45. A judgment that Tuesday Morning has indirectly infringed one or more claims of the '713 Patent and '781 Patent;

46. A judgment and order requiring Tuesday Morning to pay LakeSouth past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

47. A judgment and order requiring Tuesday Morning to pay LakeSouth reasonable ongoing royalties on a going-forward basis after final judgment;

48. A judgment and order requiring Tuesday Morning to pay LakeSouth pre-judgment and post-judgment interest on the damages award;

49. A judgment and order requiring Tuesday Morning to pay LakeSouth's costs; and

50. Such other and further relief as the Court may deem just and proper.

Dated: April 15, 2016

Respectfully submitted,

_____
**ERIC M. ALBRITTON, ATTORNEY-IN-CHARGE**
STATE BAR NO. 00790215
**SHAWN A. LATCHFORD**
STATE BAR NO. 24066603

**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com
sal@emafirm.com

**EDWARD CHIN**
STATE BAR NO. 50511688
**ANTHONY K. BRUSTER, OF COUNSEL**
STATE BAR NO. 24036280
**ALBRITTON LAW FIRM**
1330 North White Chapel Blvd. Suite 100
Southlake, Texas 76092
817.251.0610 (telephone)
903.758.7397 (facsimile)
ekc@emafirm.com
akb@emafirm.com

**COUNSEL FOR PLAINTIFF
LAKESOUTH HOLDINGS, LLC**